UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| United States of America,<br><br>                    Plaintiff,<br><br>     v.<br><br>Nelson Gutierrez,<br><br>                    Defendant. | No. 2:14-cr-00239-KJM<br><br>ORDER |

Nelson Gutierrez moves to reduce his sentence to time served under 18 U.S.C. § 3582. He contends his medical conditions put him at greater risk of severe COVID-19 symptoms, and he is incarcerated in a facility that "has experienced a significant coronavirus outbreak."  Opp'n at 6, ECF No. 262.  Although Gutierrez committed a serious drug crime and has completed only about half of his sentence of incarceration, several factors weigh in favor of his motion, including the risk of serious illness if he remains in the prison, his long-time compliance with pretrial release conditions, and his release plan.  The motion is **granted**.

## I.     BACKGROUND

The DEA found more than two kilograms of methamphetamine in Gutierrez's car in the summer of 2014.  *See* Plea Agmt. Ex. A, ECF No. 89.  They also found $2,000 cash in his pants pocket and $20,000 in the glove box.  *Id.*  He was acting more or less as a paid courier in a drug deal.  *See id.*; Presentence Report at 7, ECF No. 89; Suppl. Mot. at 4, ECF No. 258.  Although

1  this was the first time the DEA had encountered Gutierrez—he had not been under observation

2  before he was caught, *see* Plea Agmt. Ex. A—he admitted to the officers that he was on probation

3  for a state drug conviction at the time, *see* Presentence Rep. at 6, ECF No. 129.

4      Gutierrez was arrested and released on an unsecured bond.  He complied with all pretrial

5  orders and his pretrial services officer effused about his behavior—he was doing "awesome."  *Id.*

6  About two years after his arrest, he agreed to plead guilty to one count of possessing

7  methamphetamine with the intent to distribute in violation of 21 U.S.C. § 841(a)(1).  Plea Agmt.

8  at 1.  In exchange, the government agreed to recommend a reduction in the Guideline sentencing

9  range for his acceptance of responsibility and to recommend a sentence at the low end of the

10  Guideline range for his offense.  *Id.* at 4.  The government also stipulated to a Guidelines

11  reduction for his minor role in the drug conspiracy.  *See* Presentence Rep. at 16.  Gutierrez said he

12  had agreed to join the conspiracy because he was under the influence of meth and needed money

13  for drugs.  *See* Presentence Agmt. at 8.  In April 2017, another judge of this court sentenced him

14  to 87 months' incarceration and 48 months' supervised release.  *See* Judgment & Commitment at

15  2–3, ECF No. 143.  He has thus completed approximately half of his sentence of incarceration.

16  *See* Suppl. Mot. at 12; Opp'n at 4.

17      At the time of sentencing and when Gutierrez entered the prison, he had a body mass

18  index of about 50.  *See* Presentence Report at 3; Suppl. Mot. at 2.  Since then he has lost weight,

19  and his body mass index is now just below 40.  *See* N. Gutierrez Decl., ECF No. 258-1; Suppl.

20  Mot. at 2.  Tests in 2017 twice showed his systolic blood pressure was above 140, but not

21  consistently so.  *See* Suppl. Mot. Ex. A at 10, 17 (under seal[1]).  No other records of his blood

22  pressure are available.

23      After Gutierrez entered the prison, he completed wellness, diabetes, financial

24  management, employment skills, and parenting courses.  *See* Suppl. Mot. Ex. C at 1.  He has held

25  a full-time job in the prison for more than a year.  *See id.*  The only record of any discipline is a

---

[1] The court grants the request to file this exhibit under seal to protect Gutierrez's private medical information.  *See Chester v. King*, No. 16-01257, 2019 WL 5420213, at *2 (E.D. Cal. Sep. 10, 2019) ("This court, and others within the Ninth Circuit, have recognized that the need to protect medical privacy qualifies as a 'compelling reason' for sealing records.").

1    record for "Mail Abuse, Disrupt Monitoring."  *See id.*  According to his counsel, he received a

2    flyer in the mail about a service that allowed him to send text messages to people outside the

3    prison via the prison email system, and he used that service because he thought the prison

4    permitted it.  *See* Suppl. Mot. at 4–5 & Ex. C at 6–9.[2]

5         Gutierrez moved pro se for compassionate release under § 358(c)(1)(A)(1) in September

6    of last year.  ECF No. 254.  Counsel was appointed and submitted a supplemental motion on his

7    behalf.  ECF No. 258.  Briefing was only recently completed, and the motion was submitted

8    without a hearing.  *See* Opp'n, ECF No. 262; Reply, ECF No. 263; Minute Order, ECF No. 261.

9         If Gutierrez is released, he plans to live with his parents in Sacramento.  Suppl. Mot. at 5;

10   J. Gutierrez Decl., ECF No. 258-3.  They have a spare room where he can quarantine.

11   *See generally* J. Gutierrez Decl., ECF No. 258-3.  A paving company has also agreed to offer

12   Gutierrez a job as an apprentice laborer, and he would be a member of the Local 185 Laborers

13   Union, which would provide health insurance.  *See* Suppl. Mot. Ex. E, ECF No. 258-4.

14   **II.   LEGAL STANDARD**

15        A sentencing court has authority to modify a term of imprisonment under 18 U.S.C.

16   § 3582(c)(1)(A).  Under that statute, as amended by the First Step Act of 2018, Pub. L. No. 115-

17   391, 132 Stat. 5194 (Dec. 21, 2018), the court may grant a defendant's motion to reduce his term

18   of imprisonment, provided the defendant has first satisfied an exhaustion requirement, "after

19   considering the factors set forth in section 3553(a) to the extent that they are applicable," if

20   "extraordinary and compelling reasons warrant such a reduction," and if "a reduction is consistent

21   with applicable policy statements issued by the Sentencing Commission."  18 U.S.C.

22   §§ 3582(c)(1)(A), 3582(c)(1)(A)(i).

23   /////

24   /////

25   /////

---

[2] Gutierrez did not submit a sworn declaration attesting to these facts; they were reported by counsel in the supplemental brief.  Counsel's reports, however, are subject to the obligations of Rule 11, and the government does not dispute them.

Many years ago, before the First Step Act and before defendants could move to reduce their sentences under § 3582, the Sentencing Commission issued a policy statement addressing what qualifies as "extraordinary and compelling reasons" under § 3582.  *See* U.S.S.G. § 1B1.13.  The same Guidelines section also "imposes an additional consideration of whether the defendant is a danger to the safety of any other person or to the community."  *United States v. Numann*, No. 16- 00025, 2020 WL 1977117, at *2 (D. Alaska Apr. 24, 2020) (citing U.S.S.G. § 1B1.13(2)).  Since the First Step Act was passed, district courts have disagreed about whether the Sentencing Commission's statement is binding, as this court has summarized in previous orders.  *See, e.g.*, *United States v. Terraciano*, ___ F. Supp. 3d ___, No. 17-00187, 2020 WL 5878284, at *2–3 (E.D. Cal. Oct. 2, 2020) (collecting authority).  This court has looked to the Sentencing Commission's policy statement as guidance in several previous orders and will do the same here.  *See, e.g.*, *id.*; *United States v. Schweder*, No. 11-00449, 2020 WL 5257598, at *3 (E.D. Cal. Sept. 3, 2020).

## III.   DISCUSSION

The government does not dispute that Gutierrez has satisfied the exhaustion requirement of § 3582(c).  *See* Opp'n at 5.  The court thus considers (A) whether Gutierrez has demonstrated his motion is supported by extraordinary and compelling reasons and (B) whether applicable sentencing factors of § 3553(a) weigh in favor of his motion.

### A.   Extraordinary and Compelling Reasons

According to the U.S. Centers for Disease Control, people living in congregate living situations are vulnerable to infection with coronavirus because the virus is highly contagious in closed environments.[3]  The combination of custody, housing, education, recreation, healthcare, food service, and workplace environments within one physical setting makes for unique challenges in controlling the spread of coronavirus.  *See supra* note 1.  The Bureau of Prisons has "taken steps to try to protect inmates' and employees' health" and keep COVID-19 from its

---

[3] *See* Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities, U.S. Centers for Disease Control and Prevention, July 22, 2020), *available at* https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html (visited Jan. 14, 2021).

facilities, but it has "not been immune from the COVID-19 pandemic."  Opp'n at 5.  Many thousands of inmates have been diagnosed with COVID-19, and although thousands have recovered, more than 180 have died.  *Id.*

In the facility where Gutierrez lives, more than 120 people were "confirmed positive for COVID-19" in early January 2021.  *Id.* at 6.  These numbers appear to be growing and represent a "significant coronavirus outbreak."  *Id.*; *compare also* Suppl. Mot. at 5 & n.5 (citing U.S. Bureau of Prisons statistics showing that only nine inmates had tested positive for coronavirus in December 2020) *with* Reply at 1 (citing case numbers in the hundreds, as reported by the Bureau of Prisons).  Gutierrez also claims that although inmates have masks, hand sanitizer and soap are often in short supply.  *See* Suppl. Mot. Ex. C at 5, ECF No. 258-2.  He claims inmates have no choice but to use the same computers, microwaves, restrooms, and laundry, and they live together in a large, open area.  *See id.*  He claims the same correctional officers who work in his facility also work in a nearby facility that has reported many COVID-19 cases.  *See id.*  The government does not dispute these claims.  This evidence shows he is at a high risk of infection.

Gutierrez's body mass index increases the risk he would suffer a more severe case of COVID-19 if infected.  The government does not contend otherwise.  Opp'n at 10 ("Due to his obesity, Gutierrez may be eligible under the Guideline.").  District courts within the Ninth Circuit have indeed recognized that a body mass index with the same range greatly increases the risk of serious COVID-19 symptoms and complications.  *See, e.g.*, *United States v. Richardson*, 2020 WL 3402410, at *3 (E.D. Cal. June 19, 2020) ("obesity alone" places a defendant "at higher risk of COVID-19 complications").  Courts have thus granted motions for compassionate release to inmates with a body mass index within the "obese" range.  *See id.*

Gutierrez also claims to suffer from hypertension.  Suppl. Mot. at 2.  As summarized above, his systolic blood pressure was higher than 140 twice in 2017.  According to the CDC, this level is indicative of hypertension.[4]  Gutierrez's medical records, however, do not show he has been diagnosed with any conditions related to his blood pressure, and they do not contain any

---

[4] *See* U.S. Centers for Disease Control, "High Blood Pressure," (updated May 19, 2020), available at https://www.cdc.gov/bloodpressure/about.htm, last visited November 10, 2020.

1   later blood pressure records.  His blood pressure has also sometimes been lower.  *See* Suppl. Mot.

2   Ex. A at 10, 17 (under seal).  He argues nonetheless that his blood pressure places him at greater

3   risk of serious COVID-19 symptoms.  Suppl. Mot. at 9–10.  Several district courts, including the

4   undersigned, have also found that hypertension increases the risk of severe COVID-19 symptoms

5   and thus have granted motions for compassionate release to defendants with hypertension,

6   obesity, or both.  *See, e.g.*, *Richardson*, 2020 WL 3402410, at *3; *Terraciano*, 2020

7   WL 5878284, at *4.  But because it is unclear whether Gutierrez's current blood pressure puts

8   him at greater risk, this condition weighs only slightly in his favor, if at all.  Even if it did not,

9   however, the court could and would grant his motion based on his high body mass index.

10          In sum, Gutierrez's high risk of infection, his body mass index, and his history of

11  occasionally high blood pressure together make for "extraordinary and compelling"

12  circumstances that support his request for compassionate release.  The court therefore does not

13  reach his arguments about health risks related to his history of stimulant use or smoking.

14  *See* Suppl. Mot. at 8–9; Opp'n Ex. 2, ECF No. 262-1 (reproducing Gutierrez's administrative

15  request for release, in which he claimed he was "a chain smoker").

16          **B.      Section 3553(a) Sentencing Factors**

17          A Sentencing Commission policy statement instructs "the court [to] consider the

18  sentencing factors set forth in 18 U.S.C. § 3553(a) when deciding a motion for compassionate

19  release, and the [c]ourt should not grant a sentence reduction if the defendant poses a risk of

20  danger to the community, as defined in the Bail Reform Act."  *United States v. Gonzalez*,

21  451 F. Supp. 3d 1194, 1197 (E.D. Wash. 2020), at *3 (citing U.S.S.G. § 1B1.13); *see also*

22  18 U.S.C. § 3582(c)(1)(A).  These sentencing factors include, among others, (1) "the nature and

23  circumstances of the offense and the history and characteristics of the defendant" and (2) "the

24  need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for

25  the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to

26  criminal conduct; (C) to protect the public . . . ; and (D) to avoid unwarranted sentence disparities

27  . . . ."  18 U.S.C. § 3553(a).

28  /////

1    Here, Gutierrez's offenses were serious. The quantity of methamphetamine he transported

2    was large. His similar drug offense in the past also counsels in favor of caution. But several

3    other factors weigh in his favor. He played a minor role in the drug conspiracy and was less

4    culpable than his co-defendants. He complied with the conditions of his two-year-long pretrial

5    release, which suggests he is unlikely to commit a similar offense if released and can avoid

6    substance use, which he admits was the impetus of his offenses. Nothing suggests he is violent or

7    likely to put his community in danger. He will also have the support of his family, a job, and

8    health insurance. The court has conferred with its Probation Office, which will supervise

9    Gutierrez if he is released. That office has confirmed his release plan is acceptable. On balance,

10   these circumstances favor Gutierrez's motion for compassionate release, as the undersigned has

11   concluded in a similar case. *See United States v. Tamasoa*, No. 15-0124, 2020 WL 6700416, at

12   *5 (E.D. Cal. Nov. 13, 2020) (granting a motion for compassionate release to a defendant

13   convicted of a similar drug crime who suffered from similar medical conditions).

14   **IV.    CONCLUSION**

15   The request to file under seal is **granted**. The motion for compassionate release is

16   **granted**. The court modifies defendant's previously imposed sentence of incarceration of eighty-

17   seven months to time served. All other previously imposed conditions of supervised release

18   remain in effect for the full 48-month term. *See* Judgment & Commitment, ECF No. 143.

19   There being a verified residence and an appropriate release plan in place, this order is

20   stayed for up to seven days to make appropriate travel arrangements and to ensure defendant's

21   safe release. Defendant shall be released as soon as appropriate travel arrangements are made,

22   and it is safe for the defendant to travel. If more than seven days are needed to make appropriate

23   travel arrangements and ensure defendant's safe release, then the parties shall immediately notify

24   the court and show cause why the stay should be extended.

25   The court orders defendant to self-isolate for fourteen days in his parents' home once he

26   arrives, as a means of protecting his health and that of the others residing in the home while also

27   complying with all applicable public health orders. The government's request for quarantine in

28   /////

1 | custody is accordingly denied.  *See, e.g.*, *United States v. Scparta*, No. 18-578,

2 | 2020 WL 1910481, at *9 (S.D.N.Y. Apr. 20, 2020).

3 |      This order resolves ECF Nos. 254, 258, and 259.

4 |      IT IS SO ORDERED.

5 | DATED:  January 15, 2021.

_____
CHIEF UNITED STATES DISTRICT JUDGE